UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

Dolores Looney,

                        Plaintiff,

         -against-

Macy's Inc. and Thyssenkrupp Elevator Corporation,

                     Defendants.

-------------------------------------------------------------------X

Macy's Inc.,

                    Cross Claimant,

         -against-

Thyssenkrupp Elevator Corporation,

                  Cross Defendant.

-------------------------------------------------------------------X

Thyssenkrupp Elevator Corporation,

                    Cross Claimant,

         -against-

Macy's Inc.,

                  Cross Defendant.

-------------------------------------------------------------------X

**MEMORANDUM & ORDER**
16-CV-04814 (DG) (MMH)

DIANE GUJARATI, United States District Judge:

      On July 21, 2016, Plaintiff Dolores Looney commenced this negligence action in New

York Supreme Court, New York County, against Defendants Macy's Inc. ("Macy's") and

Thyssenkrupp Elevator Corporation ("Thyssenkrupp") (collectively, "Defendants").  *See*

*generally* Complaint ("Compl."), ECF No. 4 at 5-18.  Plaintiff claims to have suffered personal

injuries while descending an escalator in a Macy's store in the Queens Center Mall in Queens County, New York, as a result of Defendants' negligence.  *See* Compl. ¶¶ 49-64.[1]  The case was removed to this Court on August 29, 2016.  *See* ECF No. 1.  Subsequently, Macy's and Thyssenkrupp brought crossclaims against one another for contribution and indemnification.  *See* Macy's' Answer to Complaint ¶¶ 69-72, ECF No. 7; Thyssenkrupp's Amended Answer to Complaint ¶¶ 12-15, ECF No. 11.

Pending before the Court are Macy's' motion for summary judgment, *see* Macy's' Motion for Summary Judgment, ECF No. 68; Macy's' Memorandum of Law in Support of Macy's' Motion for Summary Judgment ("Macy's' Br."), ECF No. 68-23; Macy's' Reply in Support of Macy's' Motion for Summary Judgment ("Macy's' Reply"), ECF No. 69, and Thyssenkrupp's motion for summary judgment, *see* Thyssenkrupp's Motion for Summary Judgment, ECF No. 70; Thyssenkrupp's Memorandum of Law in Support of Thyssenkrupp's Motion for Summary Judgment ("Thyssenkrupp's Br."), ECF No. 70-22; Thyssenkrupp's Reply in Support of Thyssenkrupp's Motion for Summary Judgment ("Thyssenkrupp's Reply"), ECF No. 72.  In their respective motions, Macy's and Thyssenkrupp each seeks dismissal of Plaintiff's negligence claim against it, pursuant to Federal Rule of Civil Procedure 56.  *See* Macy's' Br. at 1; Thyssenkrupp's Br. at 1.  Plaintiff opposes both motions.  *See* Plaintiff's Memorandum of Law in Opposition ("Pl.'s Br."), ECF No. 73.[2]  Each party has filed a Statement

---

[1]  Although the Complaint is not wholly clear as to whether Plaintiff alleges a single or multiple claims of negligence, the Court conducts its analysis as though Plaintiff alleges a separate claim of negligence as to each of Macy's and Thyssenkrupp.  Whether Plaintiff alleges a single or multiple claims is not material to the Court's analysis herein.

[2]  Plaintiff filed her opposition briefing twice.  *See* ECF Nos. 71, 73.  Because Plaintiff's submissions appear to be identical, the Court refers solely to the later-filed submission, ECF No. 73, in referencing Plaintiff's briefing on the pending motions.

of Material Facts on Motion for Summary Judgment pursuant to Local Civil Rule 56.1 ("Rule 56.1 Statement").  *See* Macy's' Statement of Facts Pursuant to Local Rule 56.1 ("Macy's' 56.1"), ECF No. 68-1; Thyssenkrupp's Statement of Facts Pursuant to Local Rule 56.1 ("Thyssenkrupp's 56.1"), ECF No. 70-1; Plaintiff's Rule 56.1 Counterstatement of Material Facts ("Pl.'s 56.1"), ECF No. 73-1.

For the reasons set forth below, the Court grants Defendants' motions for summary judgment.

## BACKGROUND

### I.  Factual Background

Unless otherwise indicated, the following facts are undisputed or described in the light most favorable to Plaintiff, the non-moving party.[3]

---

[3]  Before setting forth the factual background relevant to the instant motions, the Court notes that Plaintiff's Rule 56.1 Statement – submitted as a "Counterstatement of Material Facts," *see* Pl.'s 56.1 – does not comply with Local Civil Rule 56.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Civil Rule 56.1").  Local Civil Rule 56.1(a) provides: "Upon any motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, there shall be annexed to the notice of motion a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried.  Failure to submit such a statement may constitute grounds for denial of the motion."  Local Civil Rule 56.1(b) provides that: "The papers opposing a motion for summary judgment shall include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried."  Local Civil Rule 56.1(c) provides that: "Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."  The opposing party's submission therefore "should consist of a paragraph-by-paragraph response to the movant's 56.1 statement, much like an answer to a complaint."  *In re Rezulin Prod. Liab. Litig.*, 361 F. Supp. 2d 268, 270 n.7 (S.D.N.Y. 2005); *see also Rodriguez v. Schneider*, No. 95-CV-04083, 1999 WL 459813, at *1 n.3 (S.D.N.Y. June 29, 1999) ("The non-movant, particularly if represented by counsel, should not leave it to the Court to cull from this separate statement the pieces of evidence which would support the

A.      **The March 28, 2015 Incident**

Plaintiff claims that, on March 28, 2015, she had an accident while descending an

escalator in a Macy's store in the Queens Center Mall.  Pl.'s 56.1 ¶¶ 1, 3; Macy's' 56.1 ¶ 1;

Thyssenkrupp's 56.1 ¶ 1.[4]  Specifically, Plaintiff claims that, as she reached the bottom of the

escalator, she attempted to step off but could not do so because her left shoe got caught under the

"teeth" of the escalator.  *See* Pl.'s 56.1 ¶¶ 8-9; Macy's' 56.1 ¶ 1; *see also* Thyssenkrupp's 56.1

¶ 1.

By "teeth," Plaintiff appears to refer to the escalator's comb plate or plates, or portions

thereof.  *See* Macy's' 56.1 ¶¶ 1-2, 4; Thyssenkrupp's 56.1 ¶ 8; *see also* Pl.'s Br. at 1-2; Pl.'s 56.1

---

contentions of the non-movant asserted in its paragraph-by-paragraph response without citation."), *aff'd*, 56 F. App'x 27 (2d Cir. 2003).

Here, as Thyssenkrupp argues, *see* Thyssenkrupp's Reply at 1-5, Plaintiff's Rule 56.1 Statement does not satisfy Local Civil Rule 56.1's requirements.  Both Macy's and Thyssenkrupp have submitted proper Rule 56.1 Statements, with Macy's' submission featuring 32 numbered paragraphs and Thyssenkrupp's submission featuring 70 numbered paragraphs.  However, Plaintiff's Rule 56.1 Statement features 113 numbered paragraphs and in no way indicates how those 113 paragraphs align with or depart from the specific numbered paragraphs in Defendants' submissions.  *See generally* Pl.'s 56.1.  Although the Court need not rely on this significant failure by Plaintiff, because Defendants are entitled to summary judgment on Plaintiff's negligence claims even considering Plaintiff's flawed submission as a proper Rule 56.1 Statement, the Court notes that Plaintiff's noncompliance with Local Civil Rule 56.1 would independently support granting summary judgment to Defendants on Plaintiff's negligence claims, because *all* of the facts advanced in Defendants' properly submitted Rule 56.1 Statements could be deemed admitted for purposes of the instant motions, under Local Civil Rule 56.1(c).

[4]  Any citation to the parties' Rule 56.1 Statements incorporates by reference the documents cited therein.  Each of Macy's and Thyssenkrupp has submitted its own set of exhibits in connection with its respective motion.  *See generally* ECF Nos. 68, 70.  Many of each defendant's exhibits are duplicative of those submitted by the other defendant.  Where the Court refers to particular exhibits, the Court generally refers to the exhibits submitted by Macy's, ECF Nos. 68-3–68-22.

Unless otherwise noted, all exhibit citations refer to the cited exhibit's internal pagination, rather than the pagination generated by the Court's electronic case filing system ("ECF").

¶ 37.  The subject escalator was equipped with either a comb plate or sections of comb plates at its base.  Pl.'s 56.1 ¶¶ 37-38; Macy's' 56.1 ¶ 4; Thyssenkrupp's 56.1 ¶ 8.  Comb plates at the bottom of an escalator allow for a smooth transition off the escalator.  Pl.'s 56.1 ¶ 37; *see* Macy's' 56.1 ¶ 4; Thyssenkrupp's 56.1 ¶ 8.  If something gets caught underneath an escalator's comb plate – or in its "teeth" – then the entire escalator should shut off.  Pl.'s 56.1 ¶ 37; Thyssenkrupp's 56.1 ¶ 8.

Plaintiff claims that her foot remained stuck in the escalator's teeth until "it reached the buckle of [her] shoe," at which point the escalator suddenly stopped, causing Plaintiff to be thrown to the ground.  Pl.'s 56.1 ¶ 9; *see* Macy's' 56.1 ¶ 3; Thyssenkrupp's 56.1 ¶¶ 1, 31 & n.3.[5]

When the incident occurred, there was no one directly in front of or behind Plaintiff on the subject escalator.  Pl.'s 56.1 ¶ 5; Macy's' 56.1 ¶ 2.  Certain of the parties appear to dispute whether Plaintiff was looking directly ahead when the incident occurred.  *Compare* Pl.'s 56.1 ¶ 7, *with* Thyssenkrupp's 56.1 ¶ 25.  Plaintiff testified that, as she was approaching the bottom of the escalator and right before she was going to get off the escalator, she did not observe anything unusual or out of the ordinary at the bottom of the escalator.  Thyssenkrupp's 56.1 ¶ 28; *see also* Macy's' Ex. M at 99.  Prior to being thrown from the escalator, Plaintiff did not hear any sounds coming from the subject escalator.  Pl.'s 56.1 ¶ 11; *see* Thyssenkrupp's 56.1 ¶ 27; *see also* Macy's' 56.1 ¶ 27.  Plaintiff never saw smoke coming from the escalator as she descended the escalator.  Thyssenkrupp's 56.1 ¶ 26.

---

[5]  In referring to her shoe's "buckle," Plaintiff meant to refer to the nameplate of the shoe's brand.  *See* Pl.'s 56.1 ¶ 9 n.3; *see also* Macy's' Ex. M at 102-03, ECF No. 68-15.

### B.      Macy's' Daily Escalator Inspections

Macy's employs Visual Security Officers ("VSOs") at the Queens Center Mall Macy's store.  Pl.'s 56.1 ¶ 13; *see* Macy's' 56.1 ¶ 6; Thyssenkrupp's 56.1 ¶ 12.  VSOs are responsible for, among other things, checking the store's escalators in the morning before turning them on with a key.  *See* Pl.'s 56.1 ¶ 18; Macy's' 56.1 ¶ 6; Thyssenkrupp's 56.1 ¶ 12.  These inspections are performed daily.  Macy's' 56.1 ¶ 6; Thyssenkrupp's 56.1 ¶ 12; *see also* Pl.'s 56.1 ¶ 18.  As part of these inspections, VSOs check for anything stuck in between the escalators and make sure that there is no broken comb plate on the escalators.  Pl.'s 56.1 ¶ 18; Macy's' 56.1 ¶ 7; *see also* Thyssenkrupp's 56.1 ¶¶ 13, 15.  If a VSO finds an issue with an escalator, including certain issues with respect to the escalator's comb plate or plates, or comb plate teeth, the VSO will not turn on the escalator.  *See* Macy's' 56.1 ¶ 7; Thyssenkrupp's 56.1 ¶ 17; Pl.'s 56.1 ¶ 18; Macy's' Ex. P at 30-31, ECF No. 68-18.  If two or more comb teeth are broken, then the unit would be taken out of service and the comb plate replaced.  Pl.'s 56.1 ¶ 20; Thyssenkrupp's 56.1 ¶ 15; *see also* Macy's' Ex. P at 31-32.  Upon seeing a broken comb plate, a VSO would notify Macy's' detectives and human resources, who would then contact an outside contractor to have the problem addressed.  *See* Pl.'s 56.1 ¶ 19; *see also* Macy's' 56.1 ¶¶ 7, 9; Macy's' Ex. P at 27-29.  One of Macy's' VSOs, Jennifer Davis, indicated in deposition testimony that she would usually notice a broken comb plate approximately once a week.  *See* Pl.'s 56.1 ¶ 20; Macy's' Ex. P at 30.

VSOs record the results of their inspections in a logbook.  Macy's' 56.1 ¶ 7; Thyssenkrupp's 56.1 ¶ 16; *see also* Pl.'s 56.1 ¶ 18.  If a VSO finds something stuck in an escalator, or a broken comb plate, the VSO notes that condition in the logbook.  Macy's' Ex. P at 27-28; Macy's' 56.1 ¶ 7; Thyssenkrupp's 56.1 ¶ 15.  If there are no issues with the escalator

6

preventing the VSO from turning it on, the VSO initials the logbook for that day. Thyssenkrupp's 56.1 ¶ 17.

According to the logbook for March 2015, there were no problems with the subject escalator noted from March 1, 2015 through March 28, 2015, including on the date of the incident. Macy's 56.1 ¶ 10; *see* Thyssenkrupp's 56.1 ¶ 18.

**C.      Thyssenkrupp's Maintenance and Repair of the Subject Escalator**

At all relevant times, Thyssenkrupp held certain responsibilities with respect to the maintenance, repair, and replacement of the subject escalator. Macy's 56.1 ¶ 11; *see also* Thyssenkrupp's 56.1 ¶ 22.

Thyssenkrupp would, on occasion, perform preventative maintenance work on the subject escalator. *See* Pl.'s 56.1 ¶¶ 31, 35; Macy's 56.1 ¶¶ 14, 16; Thyssenkrupp's 56.1 ¶ 22. This preventative maintenance was recorded in a service and maintenance log. Pl.'s 56.1 ¶ 35; Macy's 56.1 ¶ 16; *see also* Thyssenkrupp's 56.1 ¶ 22. This log indicates that, in the three-month period leading up to the March 28, 2015 incident, Thyssenkrupp performed 15 minutes of preventative maintenance on the subject escalator on February 10, 2015 and 40 minutes of preventative maintenance on the subject escalator on March 26, 2015 (*i.e.*, two days before the incident). Macy's 56.1 ¶ 16; *see also* Thyssenkrupp's 56.1 ¶ 22; Pl.'s 56.1 ¶ 35. With respect to the February 10, 2015 preventative maintenance, the log notes that a service mechanic applied silicone spray to the subject escalator's skirts and "checked combplate teeth," including to see whether any teeth were missing. Pl.'s 56.1 ¶ 39. With respect to the March 26, 2015 preventative maintenance, the log shows that no teeth were missing from the subject escalator on that date, and that there was not "anything wrong" with the escalator's comb plate on that date. *See* Thyssenkrupp's 56.1 ¶ 23; Macy's Ex. Q at 130-32, ECF No. 68-19. The log entry from

7

March 26, 2015 further indicates that, on that date, the subject escalator was "shutdown with 4B fault," that the subject escalator's handrails were checked, and that debris was cleaned from the subject escalator's comb plates. *See* Pl.'s 56.1 ¶ 35; Macy's' Ex. Q at 131.

Thyssenkrupp's log also reflects repairs rendered and service calls received with respect to the subject escalator for the period of December 22, 2014 through March 11, 2015. Macy's' 56.1 ¶ 17; Pl.'s 56.1 ¶¶ 40-54. The log indicates that, over that period, there were 15 service calls for the subject escalator, approximately 11 or 12 of which were related to issues with the subject escalator's comb plate or plates, or comb plate teeth. *See* Macy's' 56.1 ¶ 17; Pl.'s 56.1 ¶¶ 40-54.[6] Certain of the log entries for the dates within that period reflect that problems with the subject escalator's comb plate or plates, or comb plate teeth, were "addressed," "resolved," or otherwise acted upon, by replacing or changing the subject escalator's comb plate or plates, or portions thereof. *See* Pl.'s 56.1 ¶¶ 40, 42-44, 47-48, 50.

Thyssenkrupp's log also reflects a call made on March 7, 2015 regarding the subject escalator stopping because a shoe was stuck at the bottom. Pl.'s 56.1 ¶ 52. There were no injuries. *Id.* The call was resolved by removing the shoes from the comb plate at the bottom of the escalator, checking a switch, and returning the unit back into service. *Id.*[7] Nothing in the

---

[6] Macy's' Rule 56.1 Statement indicates that 12 of these service calls related to replacement of the comb plate teeth. *See* Macy's' 56.1 ¶ 17. Plaintiff offers a slightly different date range – from December 22, 2014 to March 15, 2015 – and submits that only 11 of the service calls made throughout that period pertained to broken or missing comb plate teeth. *See* Pl.'s Br. at 2; *see also* Pl.'s 56.1 ¶ 80 (indicating that, "between December 22, 2014 to March 7, 2015, . . . there were 11 entries relating to comb plates"). These distinctions are not material to the Court's analysis herein.

[7] Although Plaintiff's Rule 56.1 Statement uses the plural "shoes" here, it appears that the March 7, 2015 incident involved only a single shoe stuck at the bottom of the subject escalator. *See* Pl.'s 56.1 ¶ 52; *see also* Pl.'s Br. at 2. This discrepancy is not material to the Court's analysis herein.

record before the Court indicates that this March 7, 2015 incident was the result of a broken comb plate or plates, or the result of broken or missing comb plate teeth.

### D. Macy's' Escalator Expert

Macy's' escalator expert, Michael Sena, opined "within a reasonable degree of mechanical certainty" that the subject escalator "was properly maintained by Macy's" and that Macy's "did not cause or contribute to the [underlying] incident." Macy's' 56.1 ¶ 20 (alteration in original). Mr. Sena reached his opinion, in part, on the bases: (1) that, "[o]n the morning of the incident, the VSO did not observe any problems on the subject escalator, as indicated on the Log;" and (2) that "[Thyssenkrupp] performed preventative maintenance on the subject escalator two days before the incident and reported no issues or problems with it." *Id.*

In his expert report, Mr. Sena noted that Thyssenkrupp performed only 55 minutes of preventative maintenance on the subject escalator in the three-month period leading up to the incident (15 minutes on February 10, 2015 and 40 minutes on March 26, 2015). Pl.'s 56.1 ¶ 88; *see also* Macy's' Ex. R at 7, ECF No. 68-20. Mr. Sena noted that Thyssenkrupp's contract with Macy's requires the performance of a minimum of one hour of preventative maintenance per escalator, per month. Pl.'s 56.1 ¶ 88; *see also* Macy's' Ex. R at 7. Mr. Sena further noted that, "[t]herefore, [Thyssenkrupp] did not perform the required amount of [preventative maintenance] per the Contract and per industry standards." Pl.'s 56.1 ¶ 88; *see also* Macy's' Ex. R at 7.

### E. Plaintiff's Escalator Expert

In opposing Defendants' motions for summary judgment, Plaintiff relies on her own escalator expert, Patrick Carrajat. *See* Pl.'s 56.1 ¶¶ 56-85, 94-112. Specifically, Plaintiff relies on Mr. Carrajat's deposition testimony, Macy's' Ex. T, ECF No. 68-22; an expert report

provided by Mr. Carrajat on March 26, 2018, Macy's' Ex. S, ECF No. 68-21;[8] and an affidavit of Mr. Carrajat submitted in connection with the instant motions, Affidavit of Patrick A. Carrajat ("Carrajat Aff."), ECF No. 73-2.[9]

In Mr. Carrajat's deposition testimony, which in part concerned his March 26, 2018 expert report, *see, e.g.*, Macy's' Ex. T at 32-35, Mr. Carrajat provided a few "initial theories" as to "causes of entrapments of the comb plate," specifically: the lack of comb plate penetrations or poor row or tracks; worn rollers; and improper adjustment of the step chain, Pl.'s 56.1 ¶ 63; Macy's' 56.1 ¶ 21; Thyssenkrupp's 56.1 ¶ 52; *see also* Macy's' Ex. S at 7-8; Macy's' Ex. T at 47-49. With respect to the subject escalator's comb plates, Mr. Carrajat testified that he thought that there were one or two instances where the comb switch or comb plate was reset on this unit. Pl.'s 56.1 ¶ 68. Mr. Carrajat further testified that a broken comb plate can be caused by several reasons, including if someone drops a package or wheels on a cart, and does not always have to be something related to the device itself. Pl.'s 56.1 ¶ 72; *see also* Macy's' Ex. T at 101 (Mr. Carrajat acknowledging that, "[i]n this kind of environment, this kind of store," a broken comb could be caused by debris or by someone "drop[ping] a package or wheel[ing] a cart onto a unit," and that a broken comb does not "always have to be something relating to the device itself").

---

[8]  Citations to Mr. Carrajat's March 26, 2018 expert report, Macy's' Ex. S, ECF No. 68-21, refer to the page numbers generated by ECF, not the document's internal pagination.

[9]  Plaintiff's Rule 56.1 Statement also refers to an initial expert report provided by Mr. Carrajat on March 26, 2016. *See* Pl.'s 56.1 ¶ 60. This reference to 2016 appears to have been made in error, as Mr. Carrajat's deposition testimony indicates that Mr. Carrajat issued his "original preliminary expert report" on March 26, 2018. *See* Macy's' Ex. T at 33-34. In any event, the record before the Court includes only one expert report issued by Mr. Carrajat, *see generally* Macy's' Ex. S, which is dated March 26, 2018, *see* Macy's' Ex. S at 2, 9. Accordingly, the Court herein refers to this singular March 26, 2018 expert report. The date of the report has no bearing on the Court's analysis herein.

It was Mr. Carrajat's opinion that nothing Plaintiff did caused or contributed to her fall. Pl.'s 56.1 ¶ 83. Mr. Carrajat further testified at his deposition that the subject escalator was installed in 1973, which would be "way beyond its useful life," especially because of the "heavy usage." Pl.'s 56.1 ¶ 64 (quoting Macy's' Ex. T at 52-53).

Mr. Carrajat's testimony – according to Plaintiff's Rule 56.1 Statement – shows that VSOs "were not trained escalator mechanics and were not qualified to perform inspections of the mechanics of the escalators." Pl.'s 56.1 ¶ 69. Mr. Carrajat testified that it would not be possible for Macy's' employees to determine if there was adequate penetration based on visual observation alone, Pl.'s 56.1 ¶ 70, and that one cannot tell if an escalator's step is low just by looking at it, Pl.'s 56.1 ¶ 71.

Mr. Carrajat testified that he obtained documents from the New York City Department of Building's website known as ELV-3, which lists the annual Category 1 and Category 5 inspections that were found to be "unsatisfactory" for the subject escalator. Pl.'s 56.1 ¶ 81. Mr. Carrajat further testified that he did not see a Department of Buildings report of an accident on the date of Plaintiff's alleged accident. Pl.'s 56.1 ¶ 62.

As to the affidavit of Mr. Carrajat submitted in connection with the instant motions, Mr. Carrajat therein states that a photograph taken on the day of the alleged accident "clearly shows missing combfingers on both the right and left ends of the escalator," and that "[c]learly, Macy's violated its own protocols because Ms. Davis testified that if an escalator had two or more broken comb teeth, then it would be taken out of service." Carrajat Aff. ¶ 13; *see also* Pl.'s 56.1 ¶ 98.

With respect to certain service calls made to Thyssenkrupp during the period of December 22, 2014 through March 11, 2015, Mr. Carrajat submits in his affidavit that, because

12 of those calls were related to replacement of the comb plate teeth, "Macy's and [Thyssenkrupp] [were] on notice that there [wa]s excessive breakage of the combfingers." Carrajat Aff. ¶ 22; *see also* Pl.'s 56.1 ¶ 101.  Mr. Carrajat further submits that "[r]eplacing the combfingers, without determining why they [we]re breaking [wa]s negligent practice on the part of [Thyssenkrupp]."  Carrajat Aff. ¶ 22; *see also* Pl.'s 56.1 ¶ 101.  Similarly, Mr. Carrajat submits that "5 service outages a month are not common and are a sign of lack of proper care and maintenance."  Carrajat Aff. ¶ 57; *see also* Pl.'s 56.1 ¶ 111.  In his affidavit, Mr. Carrajat also takes issue with Mr. Sena's "characterization" that 40 minutes of preventative maintenance was performed on the subject escalator on March 26, 2015.  Pl.'s 56.1 ¶ 110; *see* Carrajat Aff. ¶ 54.

Finally, Mr. Carrajat submits in his affidavit that Macy's was required – but failed – to report the March 28, 2015 incident to the Department of Buildings, and that this failure "deprived . . . Plaintiff of any benefit that may have accrued from an impartial and contemporaneous inspection by a neutral party."  Carrajat Aff. ¶¶ 24-25; *see also* Pl.'s 56.1 ¶ 102.

## II.    Procedural Background

Plaintiff filed her Complaint in New York Supreme Court, New York County on July 21, 2016.  *See generally* Compl., ECF No. 4 at 5-18.  The case was removed to this Court on August 29, 2016.  *See* ECF No. 1.

Macy's' and Thyssenkrupp's motions for summary judgment were filed on May 18, 2021.  *See* ECF Nos. 68-70, 72.  On May 21, 2021, Plaintiff's Memorandum of Law in Opposition to Defendants' motions was filed, *see* ECF No. 73, together with the affidavit of

Patrick Carrajat, *see* ECF No. 73-2.  All three parties submitted Rule 56.1 Statements.  *See* ECF Nos. 68-1, 70-1, 73-1.

**STANDARD OF REVIEW**

Rule 56(a) of the Federal Rules of Civil Procedure provides that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113 (2d Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the [summary judgment] motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1); *see also Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

The moving party bears the initial burden of establishing the absence of any genuine issue of material fact.  *See Liberty Lobby, Inc.*, 477 U.S. at 256; *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008).  If the moving party meets its initial burden, "the burden shifts to the nonmovant to point to record evidence creating a genuine issue of material fact."  *Salahuddin*, 467 F.3d at 273; *accord Miller v. Nassau Health Care Corp.*, No. 09-CV-05128, 2012 WL 2847565, at *3 (E.D.N.Y. July 11, 2012).  "Like the movant, the nonmovant cannot rest on

allegations in the pleadings" but, rather, "must point to specific evidence in the record to carry its burden on summary judgment," *Salahuddin*, 467 F.3d at 273, offering "concrete evidence from which a reasonable juror could return a verdict in [its] favor," *Dister v. Cont'l Grp.*, 859 F.2d 1108, 1114 (2d Cir. 1988) (quoting *Liberty Lobby, Inc.*, 477 U.S. at 256).  The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Bald assertions, completely unsupported by evidence, do not satisfy the opposing party's burden.  *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991); *see also McPherson v. N.Y.C. Dep't of Educ.*, 457 F.3d 211, 215 n.4 (2d Cir. 2006) ("[S]peculation alone is insufficient to defeat a motion for summary judgment.").

Rule 56 "does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute."  *Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470 (2d Cir. 2002).  "While the trial court has discretion to conduct an assiduous review of the record in an effort to weigh the propriety of granting a summary judgment motion, it is not required to consider what the parties fail to point out." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 292 (2d Cir. 2000) (quotation marks omitted).

In deciding a motion for summary judgment, a district court properly considers only evidence that would be admissible at trial.  *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998).  "In determining whether summary judgment is appropriate, [a district court] must resolve all ambiguities and draw all reasonable inferences against the moving party." *Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015) (citing *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 587).  A district court "is duty bound not to weigh evidence or assess the

credibility of witnesses." *Smith v. DeGirolamo*, No. 17-CV-05532, 2020 WL 5752226, at *3 (E.D.N.Y. Sept. 25, 2020) (citing *United States v. Rem*, 38 F.3d 634, 644 (2d Cir. 1994)).

## DISCUSSION

For the reasons set forth below, Defendants are entitled to summary judgment on Plaintiff's negligence claims.

## I.    Applicable Law

The elements of a negligence claim under New York law[10] are: "(i) a duty owed to the plaintiff by the defendant; (ii) breach of that duty; and (iii) injury substantially caused by that breach." *Pasternack v. Lab'y Corp. of Am. Holdings*, 807 F.3d 14, 19 (2d Cir.), *as amended* (Nov. 23, 2015) (quoting *Lombard v. Booz-Allen & Hamilton, Inc.*, 280 F.3d 209, 215 (2d Cir. 2002)); *see also Solomon v. City of New York*, 66 N.Y.2d 1026, 1027 (1985) ("To establish a prima facie case of negligence, a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom.").

Here, Plaintiff appears to rest her negligence action on a theory of premises liability, and, more specifically, on the theory that the subject escalator or certain of its parts constituted a dangerous or defective condition that caused Plaintiff's injuries. *See, e.g.*, Pl.'s Br. at 5-6; *see also, e.g.*, Compl. ¶¶ 28-29, 46-47, 53-57. "To succeed on a premises liability claim alleging any

---

[10] All parties agree that New York substantive law applies in the instant case. *See* Pl.'s Br. at 5-8; Macy's' Br. at 8-9; Thyssenkrupp's Br. at 5-6; *see also Bonchon LLC v. LKRG Provisions & Holdings, LLC*, No. 20-CV-03938, 2021 WL 5042858, at *3 n.7 (S.D.N.Y. Oct. 29, 2021) ("The parties' briefs assume that New York law controls, and such implied consent is sufficient to establish choice of law." (quoting *Alphonse Hotel Corp. v. Tran*, 828 F.3d 146, 152 (2d Cir. 2016))).

injury caused by a defective condition, the plaintiff must demonstrate 'that the defendant either created the defective condition, or had actual or constructive notice thereof for such a period of time that, in the exercise of reasonable care, it should have corrected it.'"  *Tenay v. Culinary Tchrs. Ass'n of Hyde Park*, 281 F. App'x 11, 13 (2d Cir. 2008) (alteration accepted) (quoting *Baez v. Jovin III, LLC*, 839 N.Y.S.2d 201, 202 (2d Dep't 2007)); *accord Lionel v. Target Corp.*, 44 F. Supp. 3d 315, 318-19 (E.D.N.Y. 2014) (explaining at the summary judgment stage that, "[i]n order to show breach of a duty of care in a slip-and-fall case, the plaintiff must demonstrate a genuine issue of material fact that the defendant either created the dangerous condition or had actual or constructive notice of the condition").

"To establish that a defendant created a dangerous condition or defect, a plaintiff must point to some affirmative act on the part of the defendant." *Decker v. Middletown Walmart Supercenter Store*, No. 15-CV-02886, 2017 WL 568761, at *5 (S.D.N.Y. Feb. 10, 2017) (quotation marks omitted) (quoting *Vasquez v. United States*, No. 14-CV-01510, 2016 WL 315879, at *7 (S.D.N.Y. Jan. 15, 2016)).  "Although circumstantial evidence may be sufficient to defeat a motion for summary judgment if it creates an inference that Defendant created the condition through affirmative acts, a plaintiff cannot avoid summary judgment through mere speculation and conjecture regarding how a defendant may have created a particular hazard." *Id.* (alteration accepted) (quotation marks omitted).

As to notice, actual notice requires proof that a defendant was, "in fact, aware of the dangerous condition." *Wilson v. Wal-Mart Stores E., LP*, No. 16-CV-08637, 2018 WL 4473342, at *7 (S.D.N.Y. Sept. 18, 2018) (quotation marks omitted).  "[A] defendant has actual notice if it either created the condition or received reports of it such that it is actually aware of the existence of the particular condition that caused the [complained-of accident]." *Bogery v. United States*,

16

No. 17-CV-06996, 2018 WL 4265901, at *3 (S.D.N.Y. Sept. 6, 2018); *accord Lionel*, 44 F.

Supp. 3d at 319 n.4 ("Where the defendant created the dangerous condition, actual notice is

presumed." (quotation marks omitted)).

For a defendant to have constructive notice, the alleged defect must have been "visible

and apparent" and must have existed "for a sufficient length of time prior to the accident to

permit defendant's employees to discover and remedy it." *Antonelli v. Wal-Mart Stores, Inc.*,

216 F.3d 1071, 2000 WL 876785, at *1 (2d Cir. 2000) (quoting *Gordon v. Am. Museum of Nat.

Hist.*, 67 N.Y.2d 836, 837 (1986)); *accord Poirier v. Kohl's Dep't Stores, Inc.*, No. 19-CV-

03001, 2021 WL 1178214, at *4 (S.D.N.Y. Mar. 29, 2021).  This inquiry, like the actual notice

inquiry, focuses on the "*particular* condition that caused [the complained-of accident]."  *See*

*Gordon*, 67 N.Y.2d at 838 (emphasis added).  In connection with this inquiry, "[t]he absence of

evidence demonstrating how long a condition existed prior to a plaintiff's accident constitutes a

failure to establish the existence of constructive notice as a matter of law."  *Poirier*, 2021 WL

1178214, at *4 (quoting *Rivera v. Target Dep't Store, Inc.*, No. 15-CV-07846, 2017 WL

2709745, at *5 (S.D.N.Y. June 22, 2017)).

"Alternatively, a plaintiff can establish constructive notice through evidence that the

defendant was aware of an ongoing and recurring unsafe condition which regularly went

unaddressed." *Bogery*, 2018 WL 4265901, at *3 (quoting *Watts v. Wal-Mart Stores E., LP*,

No. 16-CV-04411, 2018 WL 1626169, at *5 n.7 (S.D.N.Y. Mar. 29, 2018)); *accord*

*O'Connor-Miele v. Barhite & Holzinger, Inc.*, 650 N.Y.S.2d 717, 719 (1st Dep't 1996).  The

New York State Court of Appeals has made clear, however, "that a defendant's 'general

awareness' of a dangerous condition on the premises is not legally sufficient to charge a

defendant with constructive notice of the particular condition that caused the plaintiff's injury."

17

*Bogery*, 2018 WL 4265901, at *3 (quoting *Gonzalez v. Wal-Mart Stores, Inc.*, 299 F. Supp. 2d 188, 193 (S.D.N.Y. 2004)); *accord Gordon*, 67 N.Y.2d at 838.  Thus, although a plaintiff proceeding under a "recurring condition" theory of constructive notice need not "establish the defendant's knowledge of the existence of the exact hazard [that caused the complained-of accident]," the plaintiff must nevertheless show that the "defendant had knowledge of the particular dangerous condition that [was] qualitatively different from a mere general awareness that a dangerous condition may be present."  *Ricci v. Wal-Mart Stores E., LP*, No. 16-CV-06920, 2018 WL 4308556, at *10 (S.D.N.Y. Sept. 10, 2018) (alterations accepted) (quotation marks omitted).

Finally, a plaintiff alleging negligence may, in certain circumstances, proceed under a theory of *res ipsa loquitur*, which does not require the plaintiff to prove the elements usually necessary to state a negligence claim, including notice.  *See Levans v. Delta Airlines, Inc.*, No. 12-CV-00773, 2016 WL 9447211, at *5 (E.D.N.Y. Aug. 1, 2016), *aff'd*, 691 F. App'x 678 (2d Cir. 2017); *see also Flowers v. Delta Airlines, Inc.*, No. 00-CV-00783, 2001 WL 1590511, at *3 (E.D.N.Y. Nov. 7, 2001) ("The doctrine [of *res ipsa loquitur*] permits a plaintiff to establish a *prima facie* case of negligence without proving the elements usually necessary to state a negligence claim.").

## II.     Defendants are Entitled to Summary Judgment on Plaintiff's Negligence Claims

### A.     The Dangerous or Defective Condition at Issue

As a preliminary matter, Plaintiff has not clearly described the exact dangerous or defective condition for which she seeks to hold Defendants liable.  *Cf. Poirier*, 2021 WL 1178214, at *4.  Plaintiff's submissions repeatedly suggest that her injuries were the result of a broken comb plate or plates, or of broken or missing comb plate teeth, at the bottom of the

18

subject escalator.  *See, e.g.*, Pl.'s Br. at 2 (referencing "issues involving the comb plate and teeth of th[e] escalator"), 11 (referencing "multiple broken combplates at the bottom of the escalator"), 13 (referencing "broken or missing combfingers"); Pl.'s 56.1 ¶ 72 (referencing potential causation of a "broken comb plate"); *see also* Pl.'s Br. at 21 (referring to "the mechanism in question" as "combplate teeth and switch").  And there is, indeed, evidence before the Court of prior incidents in which the subject escalator featured a broken comb plate or plates, or broken or missing comb plate teeth.  *See* Macy's 56.1 ¶ 17; Pl.'s 56.1 ¶¶ 40-50; *see also* Pl.'s 56.1 ¶ 80.

However, Plaintiff, at times, suggests that her injuries resulted from the malfunctioning of some other part of the subject escalator.  *See, e.g.*, Pl.'s Br. at 21-22.  In this regard, Plaintiff appears to rely on three alternative theories as to how the alleged accident occurred, all three of which seem to derive from Mr. Carrajat's expert report and deposition testimony.  Specifically, Plaintiff suggests in her Rule 56.1 Statement that the alleged accident may have resulted from: the lack of comb plate penetrations or poor row or tracks; worn rollers; or improper adjustment of the step chain.  *See* Pl.'s 56.1 ¶ 63.  All three of these theories appear aimed at explaining the causation of "[c]omb-finger entrapments" generally, *see* Macy's Ex. S at 7-8, perhaps even in the absence of a broken comb plate or plates and broken or missing comb plate teeth.  Crucially, though, none of these three theories is supported by evidence on which the Court may rely at this stage.

Mr. Carrajat refers to these theories in his deposition testimony and expert report.  *See* Pl.'s 56.1 ¶ 63; Macy's 56.1 ¶ 21; Thyssenkrupp's 56.1 ¶ 52; *see also* Macy's Ex. S at 7-8; Macy's Ex. T at 47-49.  In his deposition testimony, Mr. Carrajat describes *generally* "what causes entrapments of the comb plate."  *See* Macy's Ex. T at 47-49; *see also id.* (indicating that the identified potential causes were "hypothes[es]" or "theor[ies]").  Similarly, Mr. Carrajat's

expert report describes *generally* the most common causes of "[c]omb-finger entrapments." *See* Macy's' Ex. S at 7-8. Mr. Carrajat does not, in either his deposition testimony or his expert report, tie any of his causation theories to *this specific case*.[11] Thus, to the extent that Mr. Carrajat can be said to have opined that Plaintiff's injuries were caused not by a broken comb plate or plates, or by broken or missing comb plate teeth, at the bottom of the subject escalator, but rather by the failure of some other of the subject escalator's mechanisms, Mr. Carrajat's conclusions constitute "mere speculation" that cannot serve to raise a triable issue of fact as to the condition that caused Plaintiff's alleged accident. *See Skidd v. JW Marriot Hotels & Resorts*, No. 06-CV-01554, 2010 WL 2834890, at *5-6 (S.D.N.Y. July 8, 2010) (rejecting at the summary judgment stage as "mere speculation" portions of an affidavit submitted by Mr. Carrajat in a case regarding an alleged elevator accident); *see also Meade v. Otis Elevator Co.*, No. 15-CV-04822, 2017 WL 6509259, at *6-7 (S.D.N.Y. Dec. 18, 2017) (rejecting at the summary judgment stage as "mere speculation or conjecture" certain of Mr. Carrajat's testimony as to an alleged elevator accident (quotation marks omitted)).[12]

Accordingly, the Court focuses its negligence analysis on the sole type of possible dangerous or defective condition as to which Plaintiff has identified record evidence properly

---

[11] To the extent that Mr. Carrajat's affidavit includes any new opinions on this point – for example, Mr. Carrajat's suggestion that some other issue with the subject escalator was *causing* its combfingers to break on a regular basis, *see* Carrajat Aff. ¶ 57 – such opinions are, as set forth below, excluded and cannot serve to create a genuine dispute of material fact precluding summary judgment.

[12] Defendants each argue that the Court should reject Mr. Carrajat's deposition testimony and expert report in their *entirety*. *See* Macy's' Br. at 14-17; Thyssenkrupp's Br. at 9-11. The Court need not – and declines to – do so. As set forth in greater detail below, even accepting as true the portions of Mr. Carrajat's testimony not identified above as "mere speculation," Defendants are entitled to summary judgment.

before the Court – *i.e.*, a broken comb plate or plates, or broken or missing comb plate teeth, at the bottom of the subject escalator.[13]

### B.    Creation of a Dangerous or Defective Condition

Plaintiff does not appear to argue that Defendants created the allegedly dangerous or defective condition that caused her alleged accident.

In any event, Defendants have demonstrated an absence of record evidence permitting the conclusion that Macy's or Thyssenkrupp created a dangerous or defective condition with respect to the subject escalator.  The instant record contains no evidence showing, for example, that a Macy's or Thyssenkrupp employee caused any damage to the subject escalator's comb plate or plates, or somehow otherwise produced broken or missing comb plate teeth, present on the subject escalator at the time of Plaintiff's accident.  *See Strass v. Costco Wholesale Corp.*, No. 14-CV-06924, 2016 WL 3448578, at *4 (E.D.N.Y. June 17, 2016) (granting summary judgment where, *inter alia*, plaintiffs failed to identify any evidence that defendant created the spill that allegedly caused plaintiff's fall).

To the extent that Plaintiff argues that the record evidence shows "repeated instances of broken combplates" and that such repeated instances constitute circumstantial evidence that Macy's or Thyssenkrupp (or one of their employees) created a dangerous or defective condition, *see* Pl.'s Br. at 13, such an argument, without "any evidence specifically linking [a defendant's] actions to the hazard's *creation*," is mere speculation that does not serve to raise a genuine dispute of material fact, *see Vasquez*, 2016 WL 315879, at *7 (emphasis added).

---

[13] The Court notes that, even if the Court were to accept that Plaintiff has sufficiently identified some other dangerous or defective condition, there is no evidence before the Court suggesting that Defendants either created or were on notice of *any* such dangerous or defective condition with respect to the subject escalator.

In sum, Defendants have demonstrated an absence of record evidence showing that either of Defendants created a dangerous or defective condition with respect to the subject escalator, and Plaintiff has failed to point to any evidence showing as much.  There is no genuine dispute of material fact as to this issue.

## C.    Actual Notice

Defendants have demonstrated an absence of record evidence permitting the conclusion that Defendants had actual notice of the particular dangerous or defective condition alleged to have caused Plaintiff's accident.  First, as discussed above, there is no evidence before the Court that Macy's or Thyssenkrupp created a dangerous or defective condition with respect to the subject escalator.  Second, there is no evidence before the Court that Macy's or Thyssenkrupp (or one of their employees), for example, received a report – or otherwise actually knew – of a specific broken comb plate or plates, or of broken or missing comb plate teeth, existing at the bottom of the subject escalator at the time of Plaintiff's alleged accident.  *See Decker*, 2017 WL 568761, at *6 (granting summary judgment to defendant where, *inter alia*, plaintiff did not suggest that defendant's employees had observed the substance on the ground that allegedly caused plaintiff's fall); *Greco v. Starbucks Coffee Co.*, No. 05-CV-07639, 2006 WL 1982761, at *3 (S.D.N.Y. July 14, 2006) (concluding that plaintiff had not proven actual notice where plaintiff "failed to introduce any evidence to show that any of defendant's employees noticed the alleged puddle [that purportedly caused plaintiff to fall] or received any complaints regarding it").

Indeed, the evidence before the Court reflects that Defendants and their employees did *not* know of any issue with the subject escalator at the time of Plaintiff's alleged accident. Specifically, the instant record shows that Macy's' VSO logbook, which contained the results of

22

the daily escalator inspections performed by Macy's' VSOs, reflected that there were *no* problems with the subject escalator noted on the morning of the alleged accident, Macy's' 56.1 ¶¶ 6, 10; Thyssenkrupp's 56.1 ¶¶ 16, 18; *see also* Pl.'s 56.1 ¶ 18.  *See Ferrara v. Transform KM LLC*, No. 20-CV-00236, 2021 WL 3188389, at *3 (N.D.N.Y. July 28, 2021) (concluding, in a case concerning an alleged motorized scooter injury, that defendant had presented competent evidence that it lacked actual or constructive notice of the alleged defect where, *inter alia*, "the evidence indicate[d] that inspections of the motorized scooters were performed daily [and that] the inspection on the day of the incident did not reveal a defect in the [relevant part] of the scooter"); *Janetos v. Home Depot U.S.A., Inc.*, No. 09-CV-01025, 2012 WL 4049839, at *5, *11 (E.D.N.Y. Sept. 13, 2012) (concluding that plaintiff had not demonstrated actual notice where defendant's manager conducted a daily "safety walk" and where plaintiff failed to present "any evidence that there was knowledge or notice of an unsafe condition" discovered on the safety walk that took place on the morning of the accident); *see also Poirier*, 2021 WL 1178214, at *4 ("Moreover, assuming an employee conducted the daily yard audit check on [the date of the complained-of accident], there is no record evidence that any employee uncovered a dangerous or defective condition on that date.").  Additionally, Thyssenkrupp's service and maintenance log reflects, with respect to the preventative maintenance conducted on the subject escalator just two days before the accident, that no teeth were missing from the subject escalator's comb plate on that date, and that there was not "anything wrong" with the escalator's comb plate on that date.  *See* Thyssenkrupp's 56.1 ¶ 23; Macy's' Ex. Q at 130-32 (discussing March 26, 2015 preventative maintenance); *see also* Pl.'s 56.1 ¶ 1 (reflecting that the alleged accident occurred on March 28, 2015).

Plaintiff has not pointed to any contrary evidence on this issue.  To the extent that Plaintiff argues that "documented evidence of multiple broken combplates at the bottom of the escalator [on prior occasions] raises an issue as to whether defendants had actual notice of a hazardous condition," Pl.'s Br. at 11, this argument misunderstands the actual notice inquiry. Such "general awareness" of the subject escalator's condition "is insufficient to establish actual notice." *See Poirier*, 2021 WL 1178214, at *5.  Rather, Plaintiff must point to evidence showing that Defendants were "aware of the existence of the *particular* condition that caused the [complained-of accident]," *Bogery*, 2018 WL 4265901, at *3 – *i.e.*, that Defendants were aware of an issue that existed with the escalator's comb plate or plates, or comb plate teeth, at the time of Plaintiff's accident.  Plaintiff has not done so here.

In sum, Defendants have demonstrated an absence of record evidence showing that either of Defendants had actual notice of a dangerous or defective condition with respect to the subject escalator, and Plaintiff has failed to point to any evidence showing as much.  There is no genuine dispute of material fact as to this issue.

### D.   Constructive Notice

Defendants have similarly demonstrated an absence of record evidence permitting the conclusion that Defendants had *constructive* notice of a particular dangerous or defective condition with respect to the subject escalator.

As set forth above, in this context, there are two theories by which a plaintiff can demonstrate constructive notice.  Plaintiff does not appear to advance an argument under the first theory, which requires evidence that the alleged defect was "visible and apparent" and existed "for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it," *Antonelli*, 216 F.3d 1071, 2000 WL 876785, at *1 (quotation marks omitted).

*See* Pl.'s Br. at 15.  In any event, as Defendants have demonstrated, the instant record would not support such a theory, as there is no evidence indicating the length of time during which any dangerous or defective condition with respect to the subject escalator was present.  *See Poirier*, 2021 WL 1178214, at *4 ("The absence of evidence demonstrating how long a condition existed prior to a plaintiff's accident constitutes a failure to establish the existence of constructive notice as a matter of law." (quotation marks omitted)).  The instant record contains no evidence showing, for example, that the subject escalator featured, for some established period of time leading up to Plaintiff's alleged accident, a broken comb plate or plates, or broken or missing comb plate teeth, present at the time of the alleged accident.  Indeed, as explained above, the record evidence suggests that *no* dangerous or defective condition was present on the morning of the accident – or at least not one "visible or apparent" to the VSO who conducted that morning's inspection.  Macy's' 56.1 ¶¶ 6, 10; Thyssenkrupp's 56.1 ¶¶ 16, 18; *see also* Pl.'s 56.1 ¶ 18.[14]

Plaintiff appears to rest her constructive notice argument solely on the second theory by which a plaintiff can prove constructive notice, arguing that, here, Defendants had constructive

---

[14] To the extent that Plaintiff argues that "documented evidence of multiple broken combplates at the bottom of the escalator" on prior occasions put Defendants on *constructive* notice of a dangerous or defective condition with respect to the subject escalator, *see* Pl.'s Br. at 11, this argument cannot serve to create a genuine dispute of material fact as to a theory of constructive notice based upon the length of time that a dangerous or defective condition was visible and apparent.  To prevail under such a theory of constructive notice, a plaintiff "must provide evidence from which a jury could infer Defendant's 'constructive notice of the *specific* condition that allegedly caused plaintiff's injuries.'"  *Ghali v. Wal-Mart Stores E., LP*, No. 18-CV-02495, 2019 WL 1745704, at *7 (S.D.N.Y. Apr. 18, 2019) (emphasis added) (quoting *Carter v. N.Y.C. Hous. Auth.*, 956 N.Y.S.2d 26, 27 (1st Dep't 2012)).  Evidence as to prior incidents of broken comb plates, or broken or missing comb plate teeth, does not amount to evidence of a specific broken comb plate or plates, or specific broken or missing comb plate teeth, existing at the time of Plaintiff's alleged accident.  *See id.* (noting absence of evidence as to "the particular water on which Plaintiff allegedly slipped"); *see also Pinnock v. Kmart Corp.*, No. 04-CV-03160, 2005 WL 3555433, at *1, *3 (S.D.N.Y. Dec. 29, 2005) (focusing length-of-time constructive notice inquiry on the specific condition alleged – there, a clear plastic hanger allegedly left on the floor of a Kmart store).

notice of a hazardous condition with respect to the subject escalator "based on a recurrent condition that they failed to resolve."  Pl.'s Br. at 15 (citing *Armstrong v. Ogden Allied Facility Mgmt. Corp.*, 722 N.Y.S.2d 503 (1st Dep't 2001)); *see also Armstrong*, 722 N.Y.S.2d at 505 (acknowledging theory of constructive notice based on "an ongoing dangerous condition"). Specifically, Plaintiff appears to argue that prior incidents of broken comb plates or broken or missing comb plate teeth, as recorded in Thyssenkrupp's service and maintenance log, reflect the existence of a "recurrent condition" with respect to the subject escalator's comb plates.  *See* Pl.'s Br. at 15.  In making this argument, Plaintiff places significant weight on the March 7, 2015 call placed to Thyssenkrupp regarding the subject escalator stopping because a shoe was stuck at the bottom.  *See* Pl.'s Br. at 13; Pl.'s 56.1 ¶ 52.

Plaintiff is correct that one can, in certain circumstances, "establish constructive notice through evidence that the defendant was aware of an ongoing and recurring unsafe condition." *Bogery*, 2018 WL 4265901, at *3.  But such a theory can prevail only where the recurring unsafe condition "regularly went unaddressed."  *Id.*; *see also Ricci*, 2018 WL 4308556, at *10 (explaining that, for a "recurring dangerous condition" to give rise to constructive notice, the condition must have been "routinely left unaddressed"); *Bogery*, 2018 WL 4265901, at *6 (indicating that one element of a "recurring condition" theory is "that the condition went routinely or regularly unaddressed").

Here, drawing all reasonable inferences against Defendants, the record before the Court does contain evidence that Defendants were aware of a recurring condition with respect to the subject escalator's comb plate or plates and comb plate teeth.  As indicated by Thyssenkrupp's service and maintenance log, between December 22, 2014 and March 11, 2015 or March 15, 2015, approximately 11 or 12 service calls were received with respect to issues with the subject

escalator's comb plate or plates, or comb plate teeth.  *See* Macy's' 56.1 ¶ 17; Pl.'s 56.1 ¶¶ 40-54; *see also* Pl.'s 56.1 ¶ 80.  This evidence suggests that both Thyssenkrupp and Macy's were aware of a recurring issue with the comb plate or plates and comb plate teeth of this specific escalator. *See Bogery*, 2018 WL 4265901, at *6 ("[A]wareness of a dangerous condition that recurs in the same particular location is sufficient to prove constructive notice of a recurring condition."); *see also Lyman v. PetSmart, Inc.*, No. 16-CV-04627, 2018 WL 4538908, at *9 (S.D.N.Y. Sept. 21, 2018) (concluding that there was evidence showing that defendant was aware of a specific recurring condition with respect to dog waste within its store where the record included "testimony that dogs relieved themselves once they entered the store").

However, the record before the Court contains no evidence that this recurring condition went regularly unaddressed – indeed, quite the opposite.  There is no dispute that Macy's' VSOs, on a daily basis, checked the store's escalators in the morning before turning them on, including for issues with the escalators' comb plates and comb plate teeth.  *See* Pl.'s 56.1 ¶ 18; Macy's' 56.1 ¶¶ 6-7; Thyssenkrupp's 56.1 ¶¶ 12-13, 15, 17; Macy's' Ex. P at 30-31.[15]  It is also undisputed that Macy's' VSOs, upon seeing a broken comb plate, would notify Macy's' detectives and human resources, who would then contact an outside contractor to have the problem addressed.  *See* Pl.'s 56.1 ¶ 19; *see also* Macy's' 56.1 ¶¶ 7, 9; Macy's' Ex. P at 27-29.

---

[15] Certain of Mr. Carrajat's testimony indicates that Macy's' employees "were not qualified to perform inspections of the *mechanics* of the escalators," Pl.'s 56.1 ¶ 69 (emphasis added), and that Macy's' employees would have been unable to detect certain issues with the subject escalator based on visual inspection alone, *see* Pl.'s 56.1 ¶¶ 70-71.  These assertions, however, concern Mr. Carrajat's alternative theories as to other of the subject escalator's mechanisms that may have caused Plaintiff's alleged accident.  As explained above, these theories lack foundation in the record and do not provide a basis for denying summary judgment to Defendants.  There is no genuine dispute of material fact as to whether Macy's' VSOs could detect the kind of condition at issue here: a broken comb plate or plates, or broken or missing comb plate teeth.

Moreover, the very evidence on which Plaintiff bases her "recurring condition" theory – *i.e.*, the Thyssenkrupp service and maintenance log entries – shows that, when there were issues with the subject escalator's comb plate or plates, or comb plate teeth, those issues were, indeed, regularly "addressed" or "resolved," or otherwise acted upon, by replacing or changing the subject escalator's comb plate or plates, or portions thereof, *see* Pl.'s 56.1 ¶¶ 40, 42-44, 47-48, 50. *See Bogery*, 2018 WL 4265901, at *6 (concluding that plaintiff could not demonstrate constructive notice where "the very procedure that establishe[d] awareness of the recurring condition" negated the element "that the condition went routinely or regularly unaddressed"). This "comprehensive procedure" for addressing issues with the subject escalator, including with respect to its comb plate or plates and comb plate teeth, precludes liability for accidents arising from this known, recurring condition. *See id.*; *Lyman*, 2018 WL 4538908, at *9 (rejecting plaintiff's "recurring condition" theory where there was no dispute that defendant "employed numerous safeguards" against the dangers resulting from the type of accident complained of); *Ferrara*, 2021 WL 3188389, at *3.[16]

Plaintiff has not established a genuine dispute of material fact with respect to these issues.

---

[16] These undisputed facts separate this case from those that Plaintiff cites in support of her constructive notice argument. *See* Pl.'s Br. at 15. The *Armstrong* decision, for example, does not indicate that the record in that case contained evidence of a comprehensive procedure for addressing the hazard at issue there. *See* 722 N.Y.S.2d at 505. Plaintiff's reliance on *Morales v. LaSalle Partners*, 737 N.Y.S.2d 619 (1st Dep't 2002), which concerned an accident allegedly caused by loose carpeting, also is unavailing. Although the *Morales* case featured evidence that the defendants repeatedly called an outside company to tighten the carpet but that it kept loosening, *see id.* at 619, the *Morales* decision did not indicate that these measures were part of a comprehensive procedure like the one used by Defendants here – a procedure that is, importantly, more much more akin to the procedures at issue in *Bogery* and *Lyman*.

As to the March 7, 2015 call placed to Thyssenkrupp regarding the subject escalator stopping because a shoe was stuck at the bottom, nothing in the record before the Court indicates that this March 7, 2015 incident was the result of a broken comb plate or plates, or the result of broken or missing comb plate teeth.  *See* Pl.'s 56.1 ¶ 52.

Similarly, although Mr. Carrajat testified that he had obtained certain documents from the New York City Department of Buildings and that these documents revealed "inspections that were found to be 'unsatisfactory' for this particular escalator," *see* Pl.'s 56.1 ¶ 81, this testimony does not produce a genuine dispute of material fact as to constructive notice.  Even accepting Mr. Carrajat's testimony on this issue as true, as the Court must do at this stage, that testimony does not show that these "unsatisfactory" inspections resulted from the condition that allegedly caused Plaintiff's accident.  And, regardless, Mr. Carrajat's testimony on this point does not show that any issue with the subject escalator giving rise to an "unsatisfactory" inspection went regularly unaddressed.

The record evidence indicating that Thyssenkrupp "did not perform the required amount of [preventative maintenance] per [its contract with Macy's] and per industry standards," Pl.'s 56.1 ¶ 88; *see also* Macy's' Ex. R at 7, also does not serve to create a genuine dispute of material fact as to constructive notice.  Whether Thyssenkrupp satisfied its contractual obligations to Macy's or rose to industry standards does not bear on whether Defendants regularly addressed issues with the subject escalator's comb plate or plates and comb plate teeth – and the undisputed record evidence shows that they did.

Finally, the age of the subject escalator, *see* Pl.'s 56.1 ¶ 64, without some evidence that its age put Defendants on notice of the condition that caused Plaintiff's accident, is insufficient to create a genuine dispute of material fact.

29

In sum, Defendants have demonstrated an absence of record evidence showing that either of Defendants had constructive notice of a dangerous or defective condition with respect to the subject escalator, and Plaintiff has failed to point to any evidence showing as much.  There is no genuine dispute of material fact as to this issue.

E.    *Res Ipsa Loquitur*

Plaintiff argues that, even if Defendants are entitled to summary judgment on the issues of creation and notice, this Court may deny Defendants' summary judgment motions based on the doctrine of *res ipsa loquitur*.  *See* Pl.'s Br. at 16-25.  The Court disagrees.

"Res ipsa loquitur is an often confused and often misused doctrine that enables a jury presented only with circumstantial evidence to infer negligence simply from the fact that an event happened."  *Travco Ins. Co. v. Dinerman*, No. 16-CV-01064, 2021 WL 1193391, at *8 (E.D.N.Y. Mar. 29, 2021) (quoting *St. Paul Fire & Marine Ins. Co. v. City of New York*, 907 F.2d 299, 302-03 (2d Cir. 1990)).  The New York State Court of Appeals has characterized the doctrine as "'nothing more than a brand of circumstantial evidence,' which '*allows* but does not *require* the jury to infer that the defendant was negligent.'"  *Id.* (emphasis in original) (quoting *Morejon v. Rais Const. Co.*, 7 N.Y.3d 203, 209, 211 (2006)).  "The doctrine permits a plaintiff to establish a *prima facie* case of negligence without proving the elements usually necessary to state a negligence claim."  *Flowers*, 2001 WL 1590511, at *3.

"[I]n order to justify a res ipsa loquitur theory, a plaintiff must demonstrate that (1) the event was of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it was caused by an agency or instrumentality within the exclusive control of the defendant; and (3) it was not due to any voluntary action or contribution on the part of the plaintiff."  *Travco*

*Ins. Co.*, 2021 WL 1193391, at *8 (quoting *Potthast v. Metro-N. R.R. Co.*, 400 F.3d 143, 149 (2d Cir. 2005)); *see also Flowers*, 2001 WL 1590511, at *3 (collecting cases).

The doctrine of *res ipsa loquitur* does not preclude granting summary judgment to Defendants here, because the record before the Court permits only one conclusion with respect to the second prong of *res ipsa loquitur*: namely, that Defendants lacked "exclusive control" over the instrumentality that caused Plaintiff's alleged accident.[17]

In *St. Paul Fire & Marine Insurance Company*, the United States Court of Appeals for the Second Circuit discussed the "exclusive control" requirement of *res ipsa loquitur*, explaining:

> The purpose of the exclusive control requirement is to eliminate within reason the possibility that the event was caused by someone other than the defendant. Accordingly, in order to establish exclusive control, the evidence must afford a rational basis for concluding that the cause of the accident was probably such that the defendant would be responsible for any negligence connected with it. Although the possibility of all other causes need not be eliminated altogether, their likelihood must be so reduced that the greater probability lies at defendant's door. In other words, to invoke the doctrine of *res ipsa loquitur*, the plaintiff must establish control by the defendant of sufficient exclusivity to fairly rule out the chance that the injury was caused by some agency other than defendant's negligence.

907 F.2d at 302-03 (alteration accepted) (quotation marks omitted) (citations omitted). In general, "it is not enough to prove that the defendant had control if there is sufficient evidence

---

[17] Although the Court focuses its analysis on the "exclusive control" prong, the record before the Court also does not permit the conclusion that Plaintiff's alleged accident was of a kind that ordinarily does not occur in the absence of someone's negligence. *See Lenigan v. Syracuse Hancock Int'l Airport*, No. 10-CV-01420, 2013 WL 149461, at *9 (N.D.N.Y. Jan. 14, 2013) (observing, in case in which plaintiff claimed to have fallen while riding an escalator after the escalator either jerked or grabbed her foot, that "New York courts have repeatedly found that an accident of this type on an escalator could have occurred in the absence of negligence on anyone's part").

that a third party also had access to the instrumentality that caused the injury." *Id.* at 303. "For this reason, 'proof that third parties have had access to the instrumentality generally means that the owner's negligence cannot be inferred.'" *Flowers*, 2001 WL 1590511, at *4 (alteration accepted) (quoting *St. Paul Fire & Marine Ins. Co.*, 907 F.2d at 303); *accord De Witt Properties, Inc. v. City of New York*, 44 N.Y.2d 417, 426 (1978).

Here, the record before the Court does not permit the conclusion that the instrumentality that caused Plaintiff's alleged accident was in Defendants' exclusive control. There cannot be any serious dispute that the public had "unfettered access" to an escalator located in a department store in the Queens Center Mall. *See Flowers*, 2001 WL 1590511, at *5 ("There cannot be any serious dispute that the public had 'unfettered access' to the baggage claim area of the Delta terminal at LaGuardia airport." (quotation marks omitted)). Indeed, Mr. Carrajat's deposition testimony itself indicates that the escalator at issue was subject to "heavy usage." Macy's Ex. T at 53; *see also* Pl.'s 56.1 ¶ 64.

*Ebanks v. New York City Transit Authority* is particularly instructive on the issue of exclusive control in escalator accident cases. 70 N.Y.2d 621 (1987). There, the plaintiff was injured when he caught his foot in a gap between an escalator step and sidewall. *Id.* at 622. At trial, the jury was instructed that it could use the doctrine of *res ipsa loquitur* to infer that the defendant was liable in maintaining the escalator. *Id.* at 623. In setting aside the subsequent judgment in favor of the plaintiff, the New York State Court of Appeals explained that:

> The proof did not adequately refute the possibility that the escalator – located in a subway station used by approximately 10,000 persons weekly – had been damaged by a member of the public either through an act of vandalism or, as defendant's witness suggested, by permitting an object such as a hand truck to become caught in the space between the step and sidewall.

*Id.* In reaching this conclusion, the Court of Appeals cited its previous holding in *Dermatossian v. New York City Transit Authority*, 67 N.Y.2d 219 (1986). *See Ebanks*, 70 N.Y.2d at 623 (citing

*Dermatossian*, 67 N.Y.2d at 226-28)).  In *Dermatossian*, the New York Court of Appeals held

that the New York City Transit Authority could not be held liable for an injury caused by a

defective grab handle on a bus that was "continuously available for use by defendant's

passengers."  *Dermatossian*, 67 N.Y.2d at 228.

Courts in this Circuit have invoked *Ebanks* in granting summary judgment to defendants

in escalator accident cases in which the plaintiff sought to proceed under a theory of *res ipsa

loquitur*.  In *Rivera v. National Passenger Railroad Service*, for example, the plaintiff sued for

injuries allegedly sustained by her minor daughter when the leg of the daughter's jeans became

lodged in the "metal grating" at the bottom of an escalator in New York City's Pennsylvania

Station.  442 F. Supp. 2d 164, 166 (S.D.N.Y. 2006).  The *Rivera* court granted summary

judgment to the defendant and, in so doing, rejected the notion that the plaintiff could prevail

under a theory of *res ipsa loquitur*, specifically because the plaintiff "ha[d] not provided

evidence that could serve as the basis for a finding that the [escalator's] cover plates were in [the

defendant's] 'exclusive control' prior to the accident."  *Id.* at 169; *see also Lenigan*, 2013 WL

149461, at *9 (granting defendants' summary judgment motions in an escalator injury case after

explaining that "New York courts have repeatedly found . . . evidence of an extensive amount of

public contact on a daily basis to be, in and of itself, sufficient to preclude the application of the

doctrine of *res ipsa loquitur* in personal injury cases arising from escalators that suddenly jerked,

shook and/or stopped").

Plaintiff implicitly acknowledges that these cases' core reasoning applies here, apparently

conceding that the subject escalator's comb plate or plates, or comb plate teeth, could have been

"damaged by someone dropping something on it."  Pl.'s Br. at 21-22.  Indeed, Mr. Carrajat

acknowledged in his deposition that, "[i]n this kind of environment, this kind of store," a broken

comb could be caused by debris or by someone "drop[ping] a package or wheel[ing] a cart onto a unit," and that a broken comb does not "always have to be something relating to the device itself." Macy's' Ex. T at 101; *see also* Pl.'s 56.1 ¶ 72.

However, Plaintiff argues that "the question is not whether the public had access to combplate or combfingers, but rather whether *the mechanism that malfunctioned* was generally handled by the public." Pl.'s Br. at 21-22 (emphasis added). Here, Plaintiff appears to be referring to her three (unsupported) alternative theories as to how her injury occurred, at least some of which appear to implicate certain of the subject escalator's inner mechanisms. *See* Pl.'s 56.1 ¶ 63 (referring to "worn rollers" and "improper adjustment of the step chain"). In support of her argument, Plaintiff marshals several *elevator* cases, *see* Pl.'s Br. at 21-24, including, for example, *Kleinberg v. City of New York*, 877 N.Y.S.2d 23 (1st Dep't 2009), and *Ianotta v. Tishman Speyer Properties, Inc.*, 852 N.Y.S.2d 27 (1st Dep't 2007).

Plaintiff's argument misunderstands the "exclusive control" inquiry, the purpose of which "is to eliminate within reason the possibility that the event was caused by someone other than the defendant." *St. Paul Fire & Marine Ins. Co.*, 907 F.2d at 302. Plaintiff has repeatedly argued that her injuries were the result of a broken comb plate or plates, or broken or missing comb plate teeth. *See, e.g.*, Pl.'s Br. at 2 (referencing "issues involving the comb plate and teeth of th[e] escalator"), 11 (referencing "multiple broken combplates at the bottom of the escalator"), 13 (referencing "broken or missing combfingers"); Pl.'s 56.1 ¶ 72 (referencing potential causation of a "broken comb plate"). Indeed, Plaintiff's briefing itself refers at one point to "the mechanism in question" as "combplate teeth and switch." *See* Pl.'s Br. at 21. And, as Plaintiff appears to acknowledge, even drawing all reasonable inferences against Defendants, the instant record shows that a member of the public could have damaged the subject escalator's comb plate

34

or plates, or comb plate teeth.  *See id.* at 21-22; *see also Rivera*, 442 F. Supp. 2d at 169 (considering whether the escalator's "cover plates were in [the defendant's] 'exclusive control' prior to the accident").  Thus, even if the evidence before the Court indicated that an issue with some internal mechanism of the subject escalator (*i.e.*, one outside the public's reach) contributed to Plaintiff's alleged accident – which, as explained above, the evidence does not indicate – the instant record nevertheless would not adequately rule out the conclusion that the public could have separately caused an issue with the subject escalator's comb plate or plates, or comb plate teeth, that resulted in Plaintiff's accident.  *See Rivera*, 442 F. Supp. 2d at 169.  The record before the Court does not permit the conclusion that any negligence in this case "lies at defendant's door," instead of with some individual who may have damaged the subject escalator's comb plate or plates.  *See Flowers*, 2001 WL 1590511, at *5 (quotation marks omitted).

For the same reasons, Plaintiff's elevator cases are inapposite.  Each of those cases concerned injuries caused by a mechanism or mechanisms more conclusively beyond the public's reach.  *See Kleinberg*, 877 N.Y.S.2d at 26 (addressing "a free-falling elevator" potentially caused by the lack of "an over-speed governor"); *Ianotta*, 852 N.Y.S.2d at 29 (noting public's lack of "access to the[] mechanisms designed to make the [subject elevator's] doors retract"); *see also Stone v. Courtyard Mgmt. Corp.*, 353 F.3d 155, 158 (2d Cir. 2003) ("The public did not 'generally handle' the motor, micro-processor, sensors, or control box at issue in this case [which concerned a hotel's interior automatic doors], each of which was either embedded in doorframes or otherwise out of the public's normal reach as they passed through the open doors.").

In sum, Plaintiff cannot establish on the instant record that the instrumentality that caused her alleged accident was within Defendants' exclusive control, and there is no genuine dispute of material fact precluding summary judgment as to this issue.[18]

## F.   The Carrajat Affidavit

Finally, the affidavit of Mr. Carrajat submitted in connection with the instant motions does not give rise to a genuine dispute of material fact with respect to any of the conclusions on which the Court bases its decision, because the Court does not consider those portions of Mr. Carrajat's affidavit that contain opinions beyond those expressed in Mr. Carrajat's original expert report.[19]

Mr. Carrajat's affidavit is, in essence, a supplemental expert report that aims "to produce a more thorough and stronger report than he previously produced." *Richman v. Respironics,*

---

[18] *Pacella v. Resorts Casino Hotel*, No. 07-CV-04424, 2007 WL 2873651 (E.D.N.Y. Sept. 28, 2007), has no bearing on the exclusive control analysis here.  In *Pacella*, the court held that the two defendants – there, a hotel and a company responsible for the maintenance of the hotel's escalators – were in exclusive control of an escalator that allegedly caused the plaintiff to fall.  *Id.* at *6.  However, the issue with respect to exclusive control in *Pacella* was whether either defendant could disclaim liability on the theory that the other defendant's role with respect to the subject escalator barred the plaintiff from showing exclusive control.  *See id.* The *Pacella* court was not called upon to decide – and did not decide – whether the escalator at issue or the specific escalator component that gave rise to the alleged accident was sufficiently accessible *to the public* such that the defendants lacked exclusive control over it. *Linwood v. Schindler Elevator Corp.*, No. 16-CV-01020, 2019 WL 5722110 (S.D.N.Y. Jan. 25, 2019), *report and recommendation adopted*, ECF No. 97 (S.D.N.Y. Apr. 5, 2019), on which Plaintiff relies – *see* Pl.'s Br. at 16 – is similarly distinguishable.  There, the court rejected the argument that a corporation responsible for maintaining and servicing a store's elevator equipment lacked exclusive control over the store's elevators because a non-party maintained some degree of control over the elevators.  *Linwood*, 2019 WL 5722110, at *2, *11.  As with *Pacella*, the *Linwood* decision did not address how the *public's* access to the elevators affected the exclusive control analysis.

[19] Additionally, Mr. Carrajat's affidavit is full of the sort of "mere speculation" and "vague, conclusory and factually unsupported" assertions that do not suffice to create a genuine dispute of material fact precluding summary judgment, *Skidd*, 2010 WL 2834890, at *5 (quotation marks omitted).  *See, e.g.*, Carrajat Aff. ¶ 18 ("Macy's as part of its duty to maintain a safe premise failed to supervise [Thyssenkrupp] to ensure the escalator was even

*Inc.*, No. 08-CV-09407, 2012 WL 13102265, at *10 (S.D.N.Y. Mar. 13, 2012).  The affidavit is plainly "designed to fill significant gaps" in Mr. Carrajat's original expert report.  *Id.*  For example, it is only in the affidavit – submitted after Plaintiff had received Defendants' summary judgment briefing – that Mr. Carrajat first articulates, *inter alia*: that "[r]eplacing the [subject escalator's] combfingers, without determining why they are breaking is negligent practice on the part of [Thyssenkrupp]," Carrajat Aff. ¶ 22; that "[i]t is apparent that there is no preventive maintenance being performed," *id.* ¶ 55; that "5 service outages a month are not common and are a sign of a lack of proper care and maintenance, *id.* ¶ 57; and that "there was no effort to determine why [the subject escalator's combfingers] were breaking on a regular basis," *id.* Similarly, Mr. Carrajat submits in his affidavit – for the first time – that a photograph taken on the day of the accident "clearly shows missing combfingers on both the right and left ends of the escalator," *id.* ¶ 13, an assertion diametrically opposed to Mr. Carrajat's prior deposition testimony that photographs taken of the subject escalator right after Plaintiff's alleged accident do *not* show missing or broken comb plate teeth, *see* Macy's' Ex. T. at 131-32; 134-35.

  Rule 26 of the Federal Rules of Civil Procedure contains various provisions governing expert disclosure.  *See generally* Fed. R. Civ. P. 26(a)(2).  "The duty to disclose information concerning expert testimony is intended to allow opposing parties to have a reasonable opportunity to prepare for effective cross examination and, perhaps, arrange for expert testimony

---

being minimally serviced."), ¶ 22 ("Replacing the [subject escalator's] combfingers, without determining why they are breaking is negligent practice on the part of [Thyssenkrupp]."), ¶ 66(h) ("Macy's and [Thyssenkrupp] were in shared exclusive control of the escalator."); *see also Skidd*, 2010 WL 2834890 at *5-6 (rejecting at summary judgment stage as "mere speculation" portions of an affidavit submitted by Mr. Carrajat in a case regarding an alleged elevator accident); *Meade*, 2017 WL 6509259, at *6-7 (rejecting at summary judgment stage certain testimony of Mr. Carrajat and certain portions of an affidavit submitted by Mr. Carrajat in an elevator accident case).

from other witnesses." *See Morritt v. Stryker Corp.*, No. 07-CV-02319, 2011 WL 3876960, at

*5 (E.D.N.Y. Sept. 1, 2011) (alteration accepted) (quotation marks omitted).  Although Rule

26(e) provides for the supplementing or correcting of expert reports, it "does not grant a license

to supplement a previously filed expert report because a party wants to, but instead imposes an

obligation to supplement the report when a party discovers the information it has disclosed is

incomplete or incorrect." *Richman*, 2012 WL 13102265, at *10 (quotation marks omitted); *see*

*also Sandata Techs., Inc. v. Infocrossing, Inc.*, No. 05-CV-09546, 2007 WL 4157163, at *5 n.5

(S.D.N.Y. Nov. 16, 2007) ("The word 'incomplete' in Rule 26(e) cannot be expanded to permit a

constant stream of 'new' information that was available at the time of the initial report, but not

included because of a lack of due diligence.").

   "[E]xperts are not free to continually bolster, strengthen, or improve their reports by

endlessly researching the issues they already opined upon, or to continually supplement their

opinions.  If that were the case, there would never be any closure to expert discovery, and parties

would need to depose the same expert multiple times." *Richman*, 2012 WL 13102265, at *10

(quotation marks omitted).  "[C]ourts will not admit supplemental expert evidence following the

close of discovery when it expounds a wholly new and complex approach designed to fill a

significant and logical gap in the first report, as doing so would eviscerate the purpose of the

expert disclosure rules." *Morritt*, 2011 WL 3876960, at *5 (alteration accepted) (quotation

marks omitted); *see also Silivanch v. Celebrity Cruises, Inc.*, 171 F. Supp. 2d 241, 256 (S.D.N.Y.

2001) (noting preclusion of expert testimony that was not disclosed during expert discovery).

"Expert testimony exceeding the bounds of [an] expert's report is excludable pursuant to

[Federal Rule of Civil Procedure] 37(c)(1)." *Morritt*, 2011 WL 3876960, at *5 (quotation marks

omitted).

Plaintiff's attempt to supplement Mr. Carrajat's expert report via affidavit constitutes a violation of Rule 26.  The Court therefore considers whether to exercise its discretion to exclude Mr. Carrajat's affidavit under Rule 37(c)(1).  In this inquiry, the Court considers: (1) Plaintiff's "explanation for the failure to comply with the [disclosure requirement]; (2) the importance of the testimony of the precluded witness[]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006) (first alteration in original) (quotation marks omitted).

Having considered and weighed each of these factors as applied here, the Court concludes that these factors counsel heavily in favor of excluding Mr. Carrajat's affidavit, at least insofar as it contains opinions beyond those expressed in Mr. Carrajat's original expert report.  *See Morritt*, 2011 WL 3876960, at *8 (collecting cases).  Of particular significance here, Plaintiff has offered *no justification whatsoever* for her "failure to comply with the expert disclosure requirements."  *See id.* at *6.  This factor weighs very strongly in favor of exclusion. *See id.*  Furthermore, the facts that discovery closed many months ago, *see* January 12, 2021 Order (setting discovery deadline of February 26, 2021), and that this case has been pending for over *five* years also "weigh[] strongly against the possibility of a continuance."  *Richman*, 2012 WL 13102265, at *11 (quotation marks omitted).

The Court cannot conclude that Plaintiff's failure to comply with the requirements of Rule 26 was either "substantially justified" or "harmless."  *See* Fed. R. Civ. P. 37(c)(1).  Mr. Carrajat's affidavit is excluded insofar as it contains opinions beyond those expressed in Mr. Carrajat's original expert report, pursuant to Rule 37(c)(1).  *See Morritt*, 2011 WL 3876960, at *8.  Without those new opinions, Mr. Carrajat's affidavit does not create a genuine dispute of

material fact as to the issues on which the Court has based its analysis.[20]  *See Morritt*, 2011 WL 3876960, at *8.

* * *

In sum, Plaintiff cannot prevail under a traditional theory of negligence because the record evidence properly before the Court does not permit the conclusion that Macy's or Thyssenkrupp either created or had actual or constructive notice of the condition that Plaintiff claims caused the alleged accident.  Plaintiff also cannot proceed under the doctrine of *res ipsa loquitur* because the record evidence properly before the Court does not permit the conclusion that Macy's or Thyssenkrupp had "exclusive control" over the instrumentality that caused Plaintiff's alleged accident.

Defendants are therefore entitled to summary judgment on Plaintiff's negligence claims, and those claims are dismissed in their entirety.  Because Defendants' cross-claims against one another for contribution and indemnification are contingent on Plaintiff's negligence claims, Defendants' cross-claims also are dismissed.

## CONCLUSION

For the reasons set forth above, Macy's' Motion for Summary Judgment, ECF No. 68, and Thyssenkrupp's Motion for Summary Judgment, ECF No. 70, are GRANTED and,

---

[20] With respect to Mr. Carrajat's assertion that a photograph taken on the day of the accident "clearly shows missing combfingers on both the right and left ends of the escalator," Carrajat Aff. ¶ 13, the Court notes that this assertion derives exclusively from Mr. Carrajat's affidavit and that there is no other record evidence properly before the Court that supports this assertion.  Without the affidavit to support this assertion, the only record evidence before the Court as to photographic evidence regarding Plaintiff's alleged accident – and, specifically, whether that photographic evidence reveals a broken comb plate or plates, or missing or broken comb plate teeth – is Mr. Carrajat's deposition testimony that photographs taken of the subject escalator right after Plaintiff's alleged accident do *not* show missing or broken comb plate teeth.  *See* Macy's' Ex. T. at 131-32; 134-35.

accordingly, Plaintiff's Complaint and Macy's' and Thyssenkrupp's cross-claims are

DISMISSED.

The Clerk of Court is respectfully directed to enter judgment accordingly and to close the

case.

SO ORDERED.

/s/ Diane Gujarati

DIANE GUJARATI
United States District Judge

Dated: December 8, 2021
       Brooklyn, New York